UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RANDY OLIVER,  )  )   Plaintiff  )   )  v.  )   )  MICHAEL J. ASTRUE,  )  **Commissioner of Social Security**  )   )   Defendant  ) | Docket No. 07-157-B-W |

REPORT AND RECOMMENDED DECISION[1]

Following an order vacating and remanding an earlier decision, the plaintiff returns to this court to challenge unfavorable portions of a post-remand decision deeming him disabled, for purposes of Supplemental Security Income ("SSI") benefits, as of March 1, 2006, but not disabled, for purposes of Social Security Disability ("SSD") benefits, as of his "date last insured" of September 30, 1998. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (Docket No. 12) at 1-3; Findings 1, 7-13, Record at 265-66. He asserts, *inter alia*, that the process by which his onset date of disability was determined was flawed: in his view, he should have been found (for purposes of both SSD and SSI) to have been disabled by low back pain at a point considerably

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 19, 2008, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

earlier in time. *See* Statement of Errors at 1-3.[2] Despite the evident care employed by the administrative law judge in his handling of this case on remand, I concur that the process of determining onset date of disability was flawed. Accordingly, I recommend that the decision of the commissioner be vacated, and the case remanded for further development.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found on remand, in relevant part, that the plaintiff was insured for SSD purposes only through September 30, 1998, Finding 1, Record at 265; that the medical record established a severe impairment, consisting of degenerative disk disease of the lumbosacral spine, Finding 3, *id.*; that his impairments, singly or in combination, did not meet or equal the criteria of any impairment listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings") until possibly August 7, 2006, from which date his back condition may have equaled Listing 1.04C, Finding 4, *id.*; that from his alleged onset date (June 30, 1998) through his date last insured (and indeed until April 8, 2002), he retained the residual functional capacity ("RFC") to perform work at the light level of exertion, with no significant mental or other nonexertional limitations, Findings 1, 6, *id.*; that from June 30, 1998 through September 30, 1998, he remained capable of performing his past relevant light, unskilled to semiskilled work as a clerk/cashier in a convenience/video store, and his light, semiskilled work as a building materials sales attendant, as well as sedentary work, Finding 7, *id.*; that he was not disabled for SSD purposes at any time through expiration of his insured status

---

[2] In this case, the date of onset of disability matters for both SSD and SSI purposes. The plaintiff is eligible for SSD only if he can show he was disabled on or before his "date last insured" of September 30, 1998. *See Chute v. Apfel*, No. 98-417-P-C, 1999 WL 33117135, at *1 n.2 (D. Me. Nov. 22, 1999) (rec. dec., *aff'd* Dec. 20, 1999) ("To be eligible to receive SSD benefits the plaintiff had to have been disabled on or before her date last insured ."). While "eligibility for SSI benefits is not dependent on insured status[,]" *id.*, SSI benefits are payable for the period commencing the month after filing of an SSI application to the extent a claimant can show he was then disabled, *see, e.g.*, 20 C.F.R. § 416.335; *Baldwin v. Barnhart*, 167 Fed. Appx. 49, 51 (10th Cir. 2006); *Perkins v. Chater*, 107 F.3d 1290, 1295 (7th Cir. 1997). *(continued on next page)*

on September 30, 1998, Finding 8, *id.* at 266; that from June 25, 2001, the filing date of his SSI application, through April 7, 2002, he remained capable of performing his past relevant, light work as a clerk/cashier and as a sales attendant (as well as sedentary work), Finding 9, *id.*; that since April 8, 2002, he had been unable to perform any of his past relevant work, Finding 10, *id.*; that from April 8, 2002 (and from June 25, 2001) through February 28, 2006, he was capable of performing unskilled, sedentary work that existed in significant numbers in the national economy, as demonstrated by Rules 201.28 and 201.21 of Table 1, Appendix 2 to Subpart P, 20 C.F.R. § 404 (the "Grid"), and by the testimony of a vocational expert, Finding 11, *id.*; that since March 1, 2006, due to worsening back pain and resultant limitations, he had been unable to perform even a wide range of sedentary work, Finding 12, *id.*; and that he, therefore, had been disabled for SSI purposes since March 1, 2006, but not prior thereto, Finding 13, *id.* The Appeals Council declined to review the decision, *id.* at 244-46, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

---

The plaintiff filed the instant SSI application on June 25, 2001, *see* Record at 253, nearly five years prior to the date on which he was found to have become disabled.

3

The administrative law judge in this case reached Steps 4 and 5 of the sequential process. At Step 4, the claimant bears the burden of proof of demonstrating inability to return to past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(e), 416.920(e); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

At Step 5, the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Yuckert*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff complains that the administrative law judge committed reversible error in failing to (i) consult a medical expert regarding the onset date of disability, (ii) credit the opinion of Robert N. Phelps Jr., M.D., who had personally examined him twice and was the only physician who had the benefit of reviewing all medical evidence of record and rendering a retrospective opinion regarding onset, and (iii) comply with the Appeals Council's remand order dated April 6, 2006. *See* Statement of Errors at 1; Record at 450-51. He seeks remand with instructions to award benefits or, alternatively, remand with instructions to (i) obtain a medical expert to render an opinion regarding onset in accordance with Social Security Ruling 83-20 ("SSR 83-20"), (ii) accord proper weight to Dr. Phelps' retrospective opinion, (iii) reassess the plaintiff's RFC prior to his date last insured, (iv) reassess whether he can perform his past work or other work prior to his date last insured, and

(v) issue a new decision based on proper legal standards and substantial evidence. *See* Statement of Errors at 25.

I agree that, on the basis of the first point of error, reversal and remand are warranted. For the benefit of the parties on remand, I briefly consider the plaintiff's remaining points, neither of which independently justifies reversal. I do not find either remand with instruction to award benefits, or remand with the full panoply of requested alternative instructions, appropriate. I recommend that the court remand the case with instructions to obtain a medical expert to render an opinion regarding onset in accordance with SSR 83-20, and, with the benefit of that advice, issue a new opinion. The commissioner concedes that the plaintiff was disabled at least as of March 1, 2006. Hence, the question presented on remand is whether his onset date properly should be fixed at an earlier point in time, specifically, at any point from his alleged onset date of June 30, 1998 through February 28, 2006.

## I. Discussion

### A. Determination of Onset Date

As the plaintiff points out, *see* Statement of Errors at 15, SSR 83-20 sets forth the commissioner's policy on establishment of the onset date of disability, *see* SSR 83-20, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 49 ("In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability. In many claims, the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits.").

The ruling provides, in relevant part:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of

5

> severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

*Id.* at 51.

While SSR 83-20 does not mandate in every instance that a medical advisor be called, or additional evidence be sought, courts have construed one or both of those steps to be essential when the record is ambiguous regarding onset date. *See, e.g., Katt v. Astrue*, No. 05-55043, 2007 WL 815418, at *1 (9th Cir. Mar. 14, 2007) ("[A]n ALJ must call a medical expert if there is ambiguity in the record regarding the onset date of a claimant's disability. If the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination.") (citation and internal quotation marks omitted); *Blea v. Barnhart*, 466 F.3d 903, 910 (10th Cir. 2006) ("[A] medical advisor need be called only if the medical evidence of onset is ambiguous.") (citation and internal quotation marks omitted); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 353 (7th Cir. 2005) ("The ALJ acknowledged that the medical evidence was inconclusive. Rather than explore other sources of evidence, as SSR 83-20 requires, the ALJ drew a negative inference at that point."); *May v. Social Sec. Admin. Comm'r*, No. 97-1367, 1997 WL 616196, at *1-*2 (1st Cir. Oct. 7, 1997) (because evidence regarding date on which claimant's mental impairment became severe was ambiguous, SSR 83-20 required administrative law judge to consult medical advisor); *Grebenick v. Chater*, 121 F.3d 1193, 1200-01 (8th Cir. 1997) ("It is important to understand that the issue of whether a medical advisor is required under SSR 83-20 does not turn on whether the ALJ could reasonably have determined that [claimant] was not disabled before September 30, 1982. Rather, when there is no contemporaneous

6

medical documentation, we ask whether the evidence is ambiguous regarding the possibility that the onset of her disability occurred before the expiration of her insured status. If the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a legitimate medical basis.") (citations and internal quotation marks omitted).

The plaintiff argues that the evidence as to the onset date of his disability was ambiguous, and that the administrative law judge therefore erred in not seeking the services of such an expert to the extent he did not credit the retrospective opinion of Dr. Phelps. *See* Statement of Errors at 14-17. I agree. The plaintiff's problems can be traced to a construction accident that occurred on April 24, 1987, when he was a thirty-year-old millwright. *See, e.g.*, Record at 139-42, 160. On that day, he was laboring at a job site when a large steel plate fell on him from above, striking his back and pinning him against a concrete wall. *See, e.g., id.* at 139-42.[3] A crane was used to lift the plate from him, after which he was rushed to the emergency room at Eastern Maine Medical Center ("EMMC"). *See, e.g., id.* at 143. He was admitted as an inpatient to EMMC, hospitalized for approximately two weeks, and discharged with a diagnosis of "[m]ultiple fractures of transverse processes lumbar spine and fracture of sacral ala bilaterally." *Id.* at 139. He underwent physical therapy and was prescribed a muscle relaxant. *See id.* at 161.

Despite the grievous nature of the plaintiff's accident, it is clear that he was not immediately disabled as a result of it. For approximately six to eight months, from 1988-89, he worked full-time as a clerk in a video/convenience store, and from 1989 to 1992, he worked full-time as a building

---

[3] The plate is described in some progress notes as having weighed several hundred pounds and in others as having weighed several tons. *See, e.g.*, Record at 139, 143, 145.

materials salesman, albeit with modifications to render that job lighter duty than is typical in the trade. *See, e.g., id.* at 107, 276-80, 300-02.

The plaintiff ceased his building materials sales job in 1992, approximately six months after receiving a $90,000 settlement in an accident-related workers' compensation case. *See id.* at 278, 285. While he did some wood harvesting work from 1993 to 1997 and took a job for about a month in 2000 as a cedar-mill worker, *see id.* at 107, 280-83, there is no indication that, after leaving the building materials sales job in 1992, he ever again worked at a level sufficient to constitute substantial gainful activity, *see, e.g., id.* at 255.

As the plaintiff suggests, *see* Statement of Errors at 14-15, at hearing the administrative law judge tipped his hand that he was inclined to find the plaintiff currently disabled, but was struggling with the question of onset date. He told the plaintiff's counsel:

> There is no question this gentleman has had, you know, a severe back problem for a long time. The record is somewhat spotty here and there as I'm sure you have looked at, and it leaves itself open to all sorts of interpretations. What I am trying to figure out, and to do the right thing for this gentleman, is to figure out how restricted he was when. And how far back this relates and particularly, of course, one of the important questions is does it get back to when he was still insured. . . . So I'm trying to figure out what is the right answer in terms of, you know, when he was so restricted that he could not work at all, and when we could fairly say that well, he may have had some trouble but he still could have managed. And I just, you know, just wanting to be fair, I would like to get your views on that, and we can do that in either a couple of ways. You can either tell me what you think now, or if you would like, you could give me something in writing.

*Id.* at 326-27. The plaintiff's counsel opted to provide something in writing, saying he "would like to kind of go back and put the medical pieces in here in a little better chronology than I have got in my head at the moment." *Id.* at 327. The administrative law judge responded:

> [T]hat is the same place I am. I've got it written down and I look at it, but there are gaps, and there is jumping around and there is, you know, some differences of opinion at times and so forth. And when I sit down to come up with a decision I have got to try to pull that thread through there and get to a logical point too. So I would appreciate your input on that.

8

*Id*. at 327-28. No medical expert was present at the July 31, 2006 hearing. *See id*. at 268. Post-hearing, the plaintiff's counsel filed a retrospective opinion from his own expert, Dr. Phelps, a fellow of the American Academy of Orthopedic Surgeons and a diplomate of the American Board of Orthopedic Surgery, tracing the onset of the plaintiff's disability back to June 30, 1998. *See id*. at 450-55.[4] For a number of reasons, the administrative law judge rejected that opinion. *See id*. at 259-61.

I am mindful that remarks made at a hearing might mean little; an administrative law judge might be thinking aloud, for example, or playing devil's advocate. Yet, in this case, the tenor of the remarks is corroborated by the medical evidence itself, which fairly can be described as ambiguous as to onset date. That evidence included the following:

1.  The plaintiff did not obtain any treatment or consultation for his low back pain from 1991 through November 2001, when he was sent by the Social Security Administration to Gavin Ducker, M.D., for a consultative examination in connection with his then freshly filed claims for SSI and SSD benefits. *See, e.g., id*. at 164, 215. Per Social Security Ruling 96-7p, an "adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2007) at 140. The plaintiff offered a plausible explanation for the treatment gap: He told Dr. Ducker that during that time he had "self-medicated" by taking Ibuprofen. Record at 164. In addition, there is evidence of

---

[4] At his post-remand hearing, the plaintiff amended his alleged date of onset disability from December 31, 1991, *see (continued on next page)*

9

record that the plaintiff self-medicated during his treatment-gap period by drinking alcohol and by obtaining prescription medication, including Methadone, from family members. *See, e.g.*, *id*. at 224, 428. He was hospitalized at Acadia Hospital for alcohol detoxification from December 23, 1994 through January 3, 1995. *See id.* at 225-26.[5]

    2.    After examining the plaintiff on behalf of the Social Security Administration on or about November 14, 2001, many years prior to the onset date of March 1, 2006 ultimately found by the administrative law judge, Dr. Ducker deemed him "totally unfit for work[.]" *Id*. at 166. Dr. Ducker went on to find: "As far as work-related activities go, he could certainly sit. He should not be standing or walking, lifting, carrying or bending. He can handle fine objects. He can hear, speak and probably travel fine. These objective findings were based on my examination as above." *Id.*[6]

    3.    On or about April 8, 2002, again, many years prior to the onset date found by the administrative law judge, the plaintiff obtained a second opinion from his own consulting examiner, Dr. Phelps, to "help document his medical condition for social security." *Id*. at 184; *see also id*. at 183. Dr. Phelps stated that the plaintiff could (i) sit for five minutes comfortably, depending on the chair, after which he changed position, (ii) stand for five minutes, after which he sat down, (iii) walk fifty feet at a time and that if he forced himself to walk further, he would be in severe pain, (iv) lift forty pounds occasionally, but that caused pain for several days, (v) carry less than fifteen pounds and (v) handle small objects, although bending over to pick them up bothered him. *See id*. at 196-97.

---

Record at 18, to June 30, 1998, *see id.* at 308.

[5] At oral argument, the plaintiff's counsel attributed the treatment gap to a lack of insurance. However, counsel for the commissioner rejoined that there is no support of record for that proposition.

[6] A lumbar x-ray taken on November 2, 2001 revealed "[a]dvanced intervertebral disc narrowing with anterior and posterior hypertrophic osteophyte formation . . . present at L5-S1" and "[e]arly intervertebral disc narrowing . . . present at L2-L3 and L3-L4." Record at 227. The impression was lumbar spondylosis. *See id*.

Admittedly, there is conflicting evidence as to whether the plaintiff was disabled prior to March 1, 2006. For example, two Disability Determination Services ("DDS") non-examining consultants, Lawrence P. Johnson, M.D., and Mitchell K. Ross, M.D., disagreed with Dr. Ducker on the basis that his opinion was unsupported by the medical evidence of record and/or his own findings on examination. *See id.* at 173 (Johnson RFC report dated December 19, 2001), 181 (Ross RFC report dated March 29, 2002). Both Drs. Johnson and Ross deemed the plaintiff capable at all relevant times of meeting the exertional demands of light work, with a restriction to occasional stooping and crouching. *See id.* at 168-69, 176-77; *see also* 20 C.F.R. §§ 404.1567(b), 416.967(b). In addition, on June 27, 2005, Dr. Johnson affirmed an RFC evaluation completed on March 11, 2005 by a layperson Single Decision Maker ("SDM") finding the plaintiff capable, as of the date of evaluation, of meeting the exertional demands of light work so long as he never climbed ladders, ropes or scaffolds and only occasionally climbed ramps and stairs and occasionally balanced, stooped, knelt, crouched, and crawled. *See* Record at 378-87. The SDM deemed Dr. Phelps' 2002 RFC opinion unsupported by the results of a DDS consultative examination performed in March 2005 or by treating physicians' progress notes. *See id.* at 384.[7] At oral argument, counsel for the commissioner posited that, while the evidence as to onset date may have been ambiguous to the administrative law judge, who was a layperson, it was not ambiguous to the DDS medical consultants who reviewed it in 2001, 2002, and 2005 and unanimously concluded that the plaintiff retained the capacity for light work. In counsel's view, ambiguity, if any, existed only as to the period between June 27, 2005, when the plaintiff was found capable of performing light work, and March 1, 2006, the date by which he concededly had become disabled.

---

[7] The consultative examination to which the SDM referred was performed on or about March 7, 2005 by DDS examining consultant Robert Keenan, M.D. *See* Record at 402-06. Dr. Keenan did not translate his findings on examination, which included diminished power in the left lower extremity, a positive straight-leg raising test, and diminished range of motion *(continued on next page)*

11

Nonetheless, for purposes of whether the medical evidence regarding onset date is ambiguous, the DDS reports only add to a tapestry of conflicting evidence, rather than resolve (or preclude a finding of) any ambiguity. As the *Grebenick* case clarifies: "It is important to understand that the issue of whether a medical advisor is required under SSR 83-20 does not turn on whether the ALJ could reasonably have determined that [claimant] was not disabled before September 30, 1982. Rather, when there is no contemporaneous medical documentation, we ask whether the evidence is ambiguous regarding the possibility that the onset of her disability occurred before the expiration of her insured status. If the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a legitimate medical basis." *Grebenick,* 121 F.3d at 1200-01 (citations and internal quotation marks omitted).

Here, as in *Grebenick*, ambiguity existed. There was no contemporaneous medical evidence prior to expiration of the plaintiff's insured status, and some medical evidence from examining physicians, at least one of whom was an orthopedic specialist, indicated that the plaintiff was disabled as early as November 2001, the first point at which he had seen a physician regarding his back condition in a decade. Per SSR 83-20, in these circumstances, the administrative law judge was not at liberty to fix an onset date without aid of a medical advisor. The DDS reports of 2001, 2002, and 2005 did not serve that function because the DDS reviewers, who did not find the plaintiff to have been disabled at any point, did not address the question of the onset date of his disability. For the reasons discussed below, I find no fault in the administrative law judge's rejection of Dr.

---

in the cervical and lumbosacral spine, into an RFC. *See id.*

Phelps' retrospective opinion.[8] However, I agree that, having rejected the Phelps opinion, the administrative law judge was obliged to enlist the services of his own medical advisor. Because he did not do so, reversal and remand are required.

### B. Remaining Points of Error

For the benefit of the parties on remand, I briefly discuss the plaintiff's remaining points of error, neither of which independently warrants reversal of this case.

1.  <u>Rejection of Retrospective Phelps Opinion</u>. Following the plaintiff's second hearing, his counsel submitted an opinion of Dr. Phelps, based upon his personal examination of the plaintiff in 2002 and again in 2006 and his review of medical evidence, that (i) the plaintiff's condition currently met or equaled Listing 1.05C, (ii) it was more probable than not that he had met the Listings since June 30, 1998, and (iii) restrictions found in 2006 by a treating physician, S. Dettlebach, M.D., could be supported back to June 1998. *See* Record at 454-55. The plaintiff contends that the administrative law judge was obliged to credit Dr. Phelps' retrospective opinion inasmuch as none of his reasons for rejecting the opinion was supported by substantial evidence, and there was no conflicting evidence regarding date of onset. *See* Statement of Errors at 17-23. While, as noted above, the administrative law judge should have obtained an expert's opinion on onset date to the extent he disagreed with that of Dr. Phelps, he was not obliged simply to accept the Phelps opinion. He accorded the opinion thorough and thoughtful consideration, rejecting it on several grounds. *See* Record at 259-61. The plaintiff challenges those grounds point-by-point, seeking to dislodge the entire underpinnings of the Phelps discussion. *See* Statement of Errors at 17-23. I need not consider each of his challenges to conclude that he falls well short of showing the decision to

---

[8] I accordingly find remand for further proceedings, rather than remand with instructions to award benefits, appropriate. *See Seavey v. Barnhart*, 276 F.3d 1, 11 (1st Cir. 2001) ("[O]rdinarily the court can order the agency to provide the relief it denied only in the unusual case in which the underlying facts and law are such that the agency has no discretion to act *(continued on next page)*

13

reject the Phelps opinion was unsupported by substantial evidence. Consideration of three points suffices.

Point No. 1: Both the plaintiff's counsel, in a cover letter, and Dr. Phelps advocated for a finding that the plaintiff's condition met or equaled "Listing 1.05C." *See id.* at 377, 454-55. They misspoke: Listing 1.05C pertains to amputation. *See* Listing 1.05C. The error did not escape the administrative law judge's notice. He assumed that the plaintiff had meant to cite to Listing 1.04C, which addresses disorders of the spine with "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively[.]" Listing 1.04C; *see also* Record at 259. He proceeded to discuss, at some length, why he disagreed that the plaintiff's condition on June 30, 1998 met Listing 1.04C. *See* Record at 259-60. The plaintiff now complains that this entire analysis is worthless – a "red herring" – because it targeted the wrong Listing. *See* Statement of Errors at 20 & n.2. He contends that his counsel and Dr. Phelps referred to *former* Listing 1.05C, the contents of which were renumbered in 2002 as Listing 1.04A, not Listing 1.04C, *see id.*, and which pertains to spinal disorders accompanied by "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[,]" Listing 1.04A. Yet, as counsel for the commissioner observed at oral argument, there is no evidence of record that Dr. Phelps meant to refer to Listing 1.04A. That information is contained solely in the Statement of Errors (and is unaccompanied by any affidavit of Dr. Phelps so explaining). This is fatal to the plaint that the

---

in any manner other than to award or to deny benefits.").

administrative law judge analyzed the wrong Listing. In any event, as the First Circuit has observed, "[w]hen a claimant is represented, the ALJ[] should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored." *Faria v. Commissioner of Soc. Sec.*, No. 97-2421, 1998 WL 1085810, at *1 (1st Cir. Oct. 2, 1998) (citations and internal quotation marks omitted). Nothing in the materials presented to the administrative law judge (either the plaintiff's counsel's letter or Dr. Phelps' report) discussed the Listings in a sufficiently detailed manner to put the administrative law judge on notice that Dr. Phelps meant to refer to Listing 1.04A and not Listing 1.04C. *See* Record at 377, 454-55. In the circumstances, there is no reversible error.

Point No. 2. The plaintiff also takes the administrative law judge to task for declining to credit the Phelps opinion in part on the basis that it was contradicted by the findings of DDS non-examining physicians. *See* Statement of Errors at 21. He asserts that, unlike Dr. Phelps, none of the consultants had the opportunity to review the entire record, which included the addition of more than 68 pages of medical evidence, found at pages 386 to 455 of the Record, subsequent to completion of the final DDS RFC report (that of the SDM dated March 11, 2005, affirmed by Dr. Johnson on June 27, 2005). *See id*. Yet, at oral argument, by careful reading of the Record, counsel for the commissioner deflated this argument, pointing out that the material on the pages cited is either irrelevant to the issues raised by the plaintiff in his Statement of Errors, concerns periods of time after March 1, 2006, as of when there is no dispute that the plaintiff was disabled, or consists of records to which the final DDS reviewer did in fact have access. See Record at 386-455.[9]

---

[9] Apart from Dr. Phelps' retrospective opinion, which is found at pages 450-55 of the Record, the pages cited by the plaintiff contain: (i) a portion of the final DDS report, *see* Record at 386-87, (ii) a Psychiatric Review Technique Form, which pertains to the plaintiff's mental status and is immaterial to any issue he has raised, *see id*. at 388-401, (iii) Dr. Keenan's evaluation report, to which reference is made in the final DDS report, *see id*. at 384, 402-06, (iv) treatment records from Arthur Jewell Health Center ("Arthur Jewell") for the period from June 12, 2002 through April 20, 2005, to
*(continued on next page)*

15

Point No. 3. The plaintiff faults the administrative law judge's highlighting of a seeming inconsistency in Dr. Phelps' report. *See* Statement of Errors at 21. As the administrative law judge noted, Dr. Phelps stated that it was more probable than not that the plaintiff had met Listing 1.05C since June 30, 1998, yet, inconsistently, further commented that "what I would conclude on the basis of today's examination is that [the plaintiff] meets the criteria for 1.05C (sic); I did not think he clearly met those criteria on the previous examination in 2002." Record at 259 (quoting *id.* at 454-55). The plaintiff protests that while his "back impairment may not have 'clearly met' the listing in 2002, the question asked of him in 2006 was whether the listing was 'met or equaled.'" Statement of Errors at 21 (quoting Record at 454). Be that as it may, the question Dr. Phelps answered was whether the plaintiff's condition "met" the Listing as of June 30, 1998. *See* Record at 454. He contradicted himself, stating at one point that the plaintiff had met the Listing since then and, at another, that he did not think he met it in 2002. *See id.* at 454-55. This was a sound reason for declining to credit the opinion as it pertained to the plaintiff's condition in 1998.

2. Failure To Follow Remand Order. The plaintiff finally complains that the administrative law judge failed to follow a directive in the Appeals Council's remand order to provide a function-by-function comparison between the demands of past relevant work and the plaintiff's RFC, in accordance with SSR 82-62. *See* Statement of Errors at 23-25; *see also* Record at 346. The plaintiff points out that relevant regulations provide that on remand from the Appeals Council, "[t]he administrative law judge shall take any action that is ordered by the Appeals Council

---

which reference is made in the final DDS report, *see id.* at 386, 407-24, (v) reports of psychological treatment, which are irrelevant to any issue the plaintiff has raised, *see id.* at 425-30, (vi) Dr. Dettlebach's RFC report, which formed the basis for the administrative law judge's finding that the plaintiff was disabled as of March 1, 2006, *see id.* at 263-64, 431-36, and (vii) Arthur Jewell records for the period from April 1, 2003 through July 5, 2006, which either duplicate records noted in the report of the final DDS reviewer or concern the time period as to which there is no dispute that the plaintiff was disabled, *see id.* at 437-49.

16

and may take any additional action that is not inconsistent with the Appeals Council's remand order." Statement of Errors at 24 (quoting 20 C.F.R. § 404.977(b)).

Per SSR 82-62, a Step 4 determination of ability to return to past relevant work must contain specific findings of fact regarding (i) the claimant's RFC, (ii) the physical and mental demands of the past job/occupation, and (iii) the fit between RFC and the demands of the past relevant work. *See* SSR 82-62 at 813.

The administrative law judge found the plaintiff capable, during the period from June 30, 1998 through April 7, 2002, of performing his past relevant work as a clerk/cashier and a sales attendant. *See* Finding 7, Record at 265. Although he did not explicitly discuss the fit between the demands of the past relevant work and the assessed RFC, *see id.* at 263, and this constituted error, *see* 20 C.F.R. § 404.977(b), the error is harmless.

Through questioning at hearing, the administrative law judge established that the clerk/cashier job entailed sitting about four hours a day, standing about four hours a day, and lifting less than ten pounds. *See id.* at 277; *see also id.* at 109. He ascertained that the sales job likewise entailed sitting about four hours, standing about four hours and lifting ten pounds or less. *See id.* at 279-80; *see also id.* at 110. A person capable of performing light work, which entails the ability to stand and/or walk for approximately six hours in an eight-hour workday and lift no more than twenty pounds at a time, with frequent lifting or carrying of objects weighing up to ten pounds, *see* 20 C.F.R. §§ 404.1567(b), 416.967(b); Social Security Ruling 83-10, reprinted in *West's Social Security Reporting Service* Rulings (1983-1991) ("SSR 83-10"), at 29, plainly would be capable of

17

performing the clerk/cashier and sales jobs in the manner the plaintiff described having performed them.[10]

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED**, and the case **REMANDED** for proceedings not inconsistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of June, 2008.

           /s/ John H. Rich III
           John H. Rich III
           United States Magistrate Judge

---

[10] The plaintiff cites *Tauber v. Barnhart*, 438 F. Supp.2d 1366, 1376 (N.D. Ga. 2006), *Hutchison v. Apfel*, No. 2:98-CV-087, 2001 WL 336986, at *11 (N.D. Tex. Mar. 9, 2001), and *Mann v. Chater*, No. 95 CIV. 2997(SS), 1997 WL 363592, at *3 (S.D.N.Y. June 30, 1997), for the proposition that failure to follow an Appeals Council remand order is reversible error. *See* Statement of Errors at 24 & n.3. In all three cases, the shortcomings were of a material nature. In *Tauber*, the Appeals Council directed the administrative law judge to develop the record as to whether any of the claimant's past relevant work permitted a sit/stand option. *See Tauber*, 438 F. Supp.2d at 1375-76. In his post-remand decision, the administrative law judge omitted any mention of the need for a sit/stand option in fixing the claimant's RFC. *See id*. The court found that failure even to consider or discuss the sit/stand option constituted error. *See id*. In *Hutchison*, the administrative law judge, on remand, failed to develop the requisites of the plaintiff's past relevant work either as generally performed in the national economy or as actually performed by the plaintiff. *See Hutchison*, 2001 WL 336986, at *11. In *Mann*, the administrative law judge failed to follow SSR 83-20, omitting to obtain sufficient evidence to determine whether existing medical evidence related to the period in issue. *See Mann*, 1997 WL 363592, at *3.